.
IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| JENNIFER R. PERLMUTTER and ARAMIS GREY, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 140013D |
| v. | ) ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) | |
| Defendant. | ) | **FINAL DECISION** |

The court entered its Decision in the above-entitled matter on July 9, 2014. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

Plaintiffs appeal Defendant's Notice of Deficiency Assessment dated November 19, 2013, for the 2010 tax year. A trial was held in the Oregon Tax Courtroom on April 21, 2014, in Salem, Oregon. Kenneth E. Gustafson and Hong Nguyen appeared on behalf of Plaintiffs. Jennifer R. Perlmutter (Jennifer)[1] testified on behalf of Plaintiffs. Matthew Thorup and Ira Mitchell appeared on behalf of Defendant.

Plaintiffs' Exhibits 1 to 4 and Defendant's Exhibits A to J were received and admitted without objection.

I. STATEMENT OF FACTS

Jennifer testified that on August 3, 2010, Plaintiffs' personal property was stolen from their rental residence. (*See* Ptfs' Ex 3.) At the time of the theft, Jennifer's mother Vivian, who

---

[1] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to two individuals with the same last name, Perlmutter. To avoid confusion, the court will use the first name of the individual being referenced.

owned the residence but did not live there, was visiting and her personal property was stolen. Following discovery of the theft, Plaintiffs filed a police report and the Portland Police Bureau opened an investigation. (*See id.*) Jennifer testified that the police were unable to recover any of the stolen personal property.

Plaintiffs and Vivian received compensation for their losses from Vivian's insurance company based on her homeowner's coverage. (*See generally* Def's Ex H.) Jennifer testified that the insurance company issued two checks, one in the amount of $874.50 to compensate Vivian for a portion of her claimed theft loss and one in the amount of $2,953.52 to compensate Plaintiffs for their claimed theft loss. (*See* Def's Ex H at 1, 13.) On cross examination Jennifer testified that the insurance payment did not fully compensate Plaintiffs for the total value of the personal property stolen and none of the claimed value of the jewelry that was stolen. (*See id.* at 19.) At trial, Jennifer referenced the insurance report, specifically a spreadsheet itemizing the personal property that was stolen, location of personal property in the residence prior to the theft, and an "Estimated Cost to Replace Pre-Tax." (*See id.* at 24-25.) Jennifer testified that the personal property stolen from "BDRM 2" belonged to her mother and the personal property stolen from "BDRM 1" belonged to Plaintiffs. (*See id.*)

Jennifer testified as to how she acquired some of the personal property and determined the values. Jennifer testified that she did not have receipts for most of the personal property because there was "no tax purpose to keep the receipts at the time of purchase." Jennifer testified that she had a receipt for a Vaio laptop and determined the value for the Inspiron laptop from memory. She testified that she was present when her aunt purchased for her a Raymond Weil watch, item #25 on the insurance report spreadsheet (spreadsheet), and "checked the price online" to obtain the value of $1,950. (*See* Def's Ex H at 24.) The spreadsheet stated that the

depreciation factor for the Raymond Weil watch was 22 percent. (*Id*.) Jennifer also testified that she was present when her aunt purchased a pair of Pasquale Bruni platinum hoop earrings for $2,100, item #43, and she verified the price online of a similar pair of earrings. Plaintiffs submitted as evidence a picture of similar earrings that Jennifer found online and stated that "identical earrings * * * except these are yellow gold and mine were platinum[]" sold at auction for an estimated price of $2,500-$3,500. (Ptfs' Ex 2 at 1.) Jennifer testified that the Seiko watch, item #20, was a gift from her mother who told her the watch's value at the time of the gift was $200. (*See* Def's Ex H at 24.) The spreadsheet stated that the depreciation factor for the Seiko watch was 100 percent. (*Id*.) Jennifer testified that the value of a pair of earrings, items #45, given to her by her ex-fiancé were purchased for $1,500. (*See* Ptfs' Ex 2 at 6; *see also* Def's Ex H at 25.) Jennifer testified that she modified an engagement ring after receiving it and had it appraised by a jeweler. (*See* Ptfs' Ex 2 at 4, 6; *see also* Def's Ex A at 8-9.) Jennifer submitted an email, stating that the gifts from her ex-fiancé were made "between the years 1998 and 2001[.]" (Ptfs' Ex 2 at 6; Def's Ex A at 9.) Jennifer submitted a copy of the jeweler's appraisal dated October 24, 2013, stating a "current estimated retail value" of $5,500. (Ptfs' Ex 2 at 4.) The spreadsheet listed the value of the engagement ring as $4,175. (Def's Ex H at 25.) Plaintiffs submitted an email attesting to the value of a Lalique Star of David necklace which was purchased for $150, and given to Jennifer as a gift. (Ptfs' Ex 2 at 7.) Plaintiffs submitted multiple emails from various individuals attesting to gifts that were given to Jennifer. (Ptfs' Exs 2 at 5-6, 8.) None of those emails listed the price paid for the items or the value of the items at the time they were given as gifts. (*Id*.)

Jennifer testified that she used online estimates or her "best estimates based on her personal knowledge" to value many of the remaining items listed on the spreadsheet. Relying on

her online research, Jennifer testified that she valued an antique ring, item #70, at $10,000, and a ring she received at her bat mitzvah, item #71, at $3,000.  (*See* Def's Ex H at 25.)

## II.  ANALYSIS

The issue before the court is Plaintiffs' claimed casualty (theft) loss for the 2010 tax year.

A.     *Burden of Proof*

To prevail in their dispute in the Oregon Tax Court, Plaintiffs bear the burden of proof and must support their claimed deduction by a preponderance of the evidence.  ORS 305.427. [2] This means that Plaintiffs must demonstrate they are entitled to their claimed casualty loss by the "more convincing evidence."  *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971).  If Plaintiffs provide evidence that is inconclusive, or simply unpersuasive to the court, Plaintiffs have failed to carry their burden of proof and their claim fails.  *Reed v. Dept. of Rev*., 310 Or 260, 265, 798 P2d 235 (1990).  Despite any claims made by either Plaintiffs or Defendant, the court may determine the correct tax owed, if any.  ORS 305.575.

Plaintiffs offered case law showing that other courts used the record before the court to estimate claimed casualty loss deductions in recognition of the difficulty taxpayers had in establishing the basis and fair market value before a casualty loss of stolen personal property.  *See Willie v. Comm'r*, 32 TCM (CCH) 184 (1973), *Cohan v. Comm'r*, 39 F2d 540 (2d Cir 1930).  Plaintiffs relied on Jennifer's testimony, stating how the stolen personal property values were determined for purposes of reporting them to Vivian's insurance company.  Jennifer testified that some values were determined based on her memory, but in most cases the values were established by Jennifer's online research.  Jennifer did not represent that she had any knowledge or experience appraising jewelry nor did she provide any evidence on how her research was

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2009.

conducted beyond generalized statements regarding her online estimates. Even though Jennifer did not provide any reason to doubt her testimony, she lacked any qualifications as an expert. For many of the stolen personal property items, there was no additional evidence presented to support Jennifer's statements regarding her estimates of value. It is not possible for the court to independently examine Jennifer's referenced source material that was not offered as evidence. In evaluating Jennifer's testimony and Plaintiffs' evidence, the court considers the totality of the evidence.

B.      *Statutory Framework*

As this court has previously noted, "[t]he Oregon Legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining Oregon taxable income, subject to adjustments and modifications specified in Oregon law." *Ellison v. Dept. of Rev*., TC-MD No 041142D, WL 2414746 *6 (Sep 23, 2005) (citing ORS 316.007). As a result, the legislature adopted, by reference, the federal definition for deductions, including those allowed under section 165 of the IRC for casualty or theft losses. *See* ORS 316.007; ORS 316.012. IRC section 165(a) states that "[t]here shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." Under Treasury Regulation 1.165-7(b)(1) "the amount of [the] loss * * * shall be the lesser * * * of either the fair market value of the property [] before the [loss] reduced by the fair market value of the property [] after the [loss,] or [t]he amount of the adjusted basis" under Treasury Regulation § 1.1011-1. *Id*.; Treas. Reg. § 1.165-8(c). Furthermore, "the amount deductible shall be limited to that portion of the loss which is in excess of $100." Treas. Reg. § 1.165-8(c). To determine the "fair market value of the property after the [loss]," Treasury

/ / /

Regulation 1.165-8(c) states that "the fair market value of the property immediately after the theft shall be considered to be zero."

The parties agree that Plaintiffs' personal property was stolen in 2010. The parties agree that the insurance report spreadsheet is an accurate list of the personal property stolen. (*See* Def's Ex H at 24-25.) The parties disagree as to the "fair market value * * * before the loss" and the "adjusted basis" of the stolen personal property. *See* Treas. Reg. §§ 1.165-7, 1.165-8.

In order for Plaintiffs to carry their burden of proof, Plaintiffs must prove "the fair market value of the property immediately before the casualty, its fair market value immediately thereafter, and the property's basis." *Millsap v. Comm'r* (*Millsap*), 46 TC 751, 759 (1966); *see also Griggs v. Comm'r,* 96 TCM (CCH) 248, 2008 WL 4643010 at *12 (Oct 21, 2008). Plaintiffs must prove the fair market value immediately before the loss and the stolen personal property's adjusted basis. Treas. Reg. § 1.165-8(c). For a theft loss, the fair market value immediately after the casualty is zero. *Id*. The stolen personal property's adjusted basis is the personal property's cost, subject to any applicable adjustments. Treas. Reg. § 1.1011-1. Both values are required to determine the amount of the deduction allowed because Plaintiffs are allowed a loss deduction for the lesser of the two values. *See Millsap*, 46 TC at 759.

C.    *Computers*

Jennifer testified that two computers were among the personal property stolen. She testified that she determined the Vaio computer's value based on the computer's purchase receipt and the Inspiron computer's value was based on her recollection of the computer's price. The receipt for the Vaio computer was not submitted. Without receipts for the computer purchases, the only evidence of the computers' adjusted bases is Jennifer's testimony. There was no evidence or testimony as to computers' fair market values at the time of the theft. Plaintiffs

referenced the spreadsheet in support of their values. The spreadsheet listed depreciated values for the computers, without explanation of how the depreciation factors were determined and the person or persons who prepared the insurance report did not testify as to how the original cost and depreciated values were determined. Plaintiffs have not carried their burden of proof, failing to prove the computers' values, specifically the adjusted basis and fair market value of each computer before it was stolen.

D.    *Gifts*

Jennifer testified that many of the items that were stolen she acquired by gift. She testified that she was either present when the gift was purchased or that she was told the value of the gift at the time she received it.

   *1. Watches*

Jennifer testified to two gifts, a Raymond Weil watch purchased for $1,950 and a Seiko watch purchased for $200. The spreadsheet listed the same original cost for the two watches as testified by Jennifer and depreciated values for the watches, without explanation of how the depreciation factors were determined. The individual or individuals who prepared the spreadsheet did not testify as to how the original cost and depreciated values were determined. (Def's Ex H at 24.) The spreadsheet stated that the depreciation factor for the Seiko watch was 100 percent and the Weil watch was 22 percent. (*Id.*) Even though there was no additional testimony given regarding the applicability of the depreciation schedules used for the watches, it seems correct that some depreciation should be applied to determine the watches' values before they were stolen. Plaintiffs failed to provide the substantiation required to prove that the depreciation applied was correct or accurate. Even if the court were to accept Jennifer's testimony in support of the adjusted bases of the watches, Plaintiffs offered no evidence of fair

market value before the theft.  Without proving both their adjusted bases in the watches and the fair market values before the theft, Plaintiffs have not carried their burden of proof.

### 2. *Earrings*

Jennifer testified that she received a pair of Pasquale Bruni earrings purchased for $2,100 as a gift.  There was no evidence presented that the earrings would be subject to any depreciation.  (Def's Ex H at 25.)  Additional evidence was presented that the earrings were a gift from Jennifer's aunt in 2001.  (Ptfs' Ex 2 at 2, 8; Def's Ex G at 4.)  Plaintiffs submitted as evidence a picture of similar earrings Jennifer found online and stated that "identical earrings * * * except these are yellow gold and mine were platinum" sold at auction for an estimated price of $2,500-$3,500.  (Ptfs' Ex 2 at 1.)  After considering the totality of the evidence, the court accepts Plaintiffs' determination that the earrings' fair market value before the theft and Plaintiffs' adjusted basis was no more than $2,100.  Plaintiffs established a casualty loss value of $2,100 for the Pasquale Bruni earrings.

### 3. *Gifts from Ex-Fiancé*

Jennifer testified that her ex-fiancé gave her two pieces of jewelry, a pair of earrings and an engagement ring.  Plaintiffs valued the earrings at $1,500 and the engagement ring at $4,175, matching the values stated on the spreadsheet.  (Def's Ex H at 24-25.)  Jennifer's estimate of the engagement ring's value was supported by a jeweler's appraisal dated October 24, 2013, stating a "current estimated retail value" of $5,500.  (Ptfs' Ex 2 at 4.)  The "current estimated retail value" was dated October 24, 2013, over three years after the theft and is at best an indication that the ring appreciated in value from the time of the theft to the time of the appraisal.  Plaintiffs submitted an email, stating that the gifts were made "between the years 1998 and 2001" but submitted no evidence of value at the time of the gift.  (Def's Ex A at 9.)  Plaintiffs presented no

evidence of their adjusted basis in the engagement ring at the time of the gift nor did Plaintiffs present any evidence as to the adjusted basis of the earrings. Without proving both the adjusted basis of the engagement ring and earrings and the fair market value of the engagement ring and earrings before the theft, Plaintiffs have not carried their burden of proof.

*4. Necklace*

Evidence was submitted in support of the values for a Lalique Star of David necklace, which was a gift to Jennifer. (Ptfs' Ex 2 at 7; Def's Ex A at 10.) The purchase price at the time of the gift was $150, and the fair market value before the theft reported on the spreadsheet was $150. There was no evidence presented that the necklace depreciated in value. (Def's Ex H at 25.) After considering the totality of the evidence, the court accepts Plaintiffs' determination that the necklace's fair market value before the theft and Plaintiffs' adjusted basis was no more than $150. Plaintiffs established a casualty loss value of $150 for the Lalique Star of David necklace.

*5. Rings*

Jennifer also testified about two more rings: an antique ring with a stated valued of $10,000 on the spreadsheet and a ring with a stated valued of $3,000 on the spreadsheet which she received as a gift at her bat matzvah. Jennifer testified that the rings' values were based on online estimates, but did not submit any documents to support her testimony. Even though Jennifer appears to have made a good faith effort to determine the rings' values, Plaintiffs did not provide any evidence to support Jennifer's valuations. Without more evidence the court cannot accept Jennifer's valuations of the rings as either Plaintiffs' adjusted bases or the rings' fair market values before the theft. Plaintiffs have not carried their burden of proof.

/ / /

E.      *Other Personal Property*

Jennifer offered testimony regarding other personal property listed on the worksheet, testifying that the values were determined based on her memory or online research.  Jennifer's generalized, unsubstantiated testimony is insufficient to establish either the fair market before the casualty or Plaintiffs' adjusted basis for the value of the other personal property.  For the other personal property listed on the worksheet, Plaintiffs failed to carry their burden of proof.

In sum, Plaintiffs presented evidence to substantiate a casualty loss of $2,250.  A casualty loss can only be deducted if the loss is not compensated for and the claimed deduction after compensation, if any, is reduced by $100.  Plaintiffs received compensation for the casualty loss in the amount of $2,953.52, an amount greater than the casualty loss amount Plaintiffs substantiated.  Plaintiffs are not entitled to a casualty loss deduction for the 2010 tax year.

III.  CONCLUSION

Plaintiffs did not carry their burden of proof to substantiate a casualty loss greater than the amount Plaintiffs received as compensation from the insurance company for their claimed casualty loss.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ____ day of July 2014.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR. Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*
*This Final Decision was signed by Presiding Magistrate Jill A. Tanner on July 28, 2014.  The Court filed and entered this Final Decision on July 28, 2014.*